NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1419
_____

UNITED STATES OF AMERICA,
                                                        Appellant

v.

TERRANCE HARDEE, a/k/a Fat Cat
_____

On Appeal from the United States District Court
for the District of New Jersey
(D. NJ. No. 1-12-cr-00734-002)
District Judge: Honorable Joseph E. Irenas
_____

Argued January 19, 2016
Before:  FISHER, CHAGARES and BARRY, *Circuit Judges*.

(Filed: February 12, 2016)

Paul J. Fishman, U.S. Attorney
Mark E. Coyne, Assistant U.S. Attorney  *[ARGUED]*
Office of United States Attorney
970 Broad Street
Room 700
Newark, NJ 07102
        *Counsel for Appellant*

David S. Rudenstein, Esq.  *[ARGUED]*
9411 Evans Street
Philadelphia, PA 19115
        *Counsel for Appellee*

_____

OPINION[*]

_____

FISHER, *Circuit Judge*.

Terrance Hardee was convicted by jury of conspiracy to distribute cocaine and conspiracy to commit robbery. He was sentenced to 92 months' incarceration on each count to be served concurrently. The Government has appealed his sentence and argues that the District Court procedurally erred by failing to consider Hardee's career offender status in determining his sentence. We will reverse and remand for resentencing.

I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts that are necessary to our analysis.

Hardee's convictions stem from an ATF[1]-initiated criminal investigation of Ralph Dennis, one of Hardee's coconspirators. Based on this investigation, the ATF engaged Dennis, through a confidential informant, in a fictitious stash house robbery. The confidential informant told Dennis that a disgruntled drug courier for a drug dealer, an undercover ATF agent, had told the confidential informant that at least 15 kilograms of cocaine was in the drug dealer's stash house. In order to implement the robbery, Dennis

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.
[1] Bureau of Alcohol, Tobacco, Firearms and Explosives.

2

recruited Hardee and another coconspirator, John Mitchell. Through Dennis, the confidential informant, and the ATF agent each conspirator was made aware that at least 15 kilograms or more of cocaine was in the stash house. This was confirmed at a final pre-robbery meeting. Once the ATF had the conspirators' confirmations at that meeting, law enforcement officers moved in, arrested the conspirators, and recovered two guns.

Based on these events, a three-count superseding indictment was filed, charging Dennis and Hardee with: conspiracy to commit robbery, in violation of 18 U.S.C. § 1951(a); conspiracy to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A); and use of a firearm during the commission of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(i).[2] Both Hardee and Dennis proceeded to trial. A jury convicted Dennis of all charges. Hardee was convicted of the conspiracy charges but acquitted of the firearm charge. The jury also found that the drug quantity for the distribution conspiracy was 5 kilograms or more of cocaine despite the option of a lesser included offense of 500 grams or more. This verdict carried the possibility of a life sentence and a mandatory minimum 10-year sentence.

Because of the firearm conviction, Dennis was subject to an additional 5-year mandatory consecutive sentence. He was sentenced to the mandatory minimums for the firearm and the distribution charges, 15 years' incarceration, a variance from his applicable career offender Guidelines range. The Government did not appeal.

---

[2] Mitchell cooperated with the Government and separately pleaded guilty.

After Hardee's conviction, a pre-sentence report ("PSR") was completed. The PSR indicated that Hardee was a career offender. Hardee's career offender status, coupled with the possible sentence of life imprisonment, resulted in a total offense level of 37, a criminal history category of VI, and a Guidelines range of 360 months' imprisonment to life imprisonment. The PSR's calculations were based on a drug quantity of 15 kilograms or more, the amount of fictitious drugs in the stash house.[3]

Hardee's sentencing spanned two hearings. At the first hearing, the District Court recognized the findings in the PSR. However, the District Court was concerned that the fictitious drug quantity, 15 kilograms or more, was substantially more than what Hardee had previously been convicted of possessing or distributing, which it considered to be sentencing manipulation. The District Court stated that it was considering: (1) reducing Hardee's criminal history category from VI to V because his criminal history category overrepresented his criminal record; (2) reducing the drug quantity to 500 grams or more of cocaine, due to sentencing manipulation, which would reduce the maximum sentence to 25 years and the total offense level to 34; and (3) finding that Hardee's Guidelines range was 235 to 293 months' incarceration, before a variance. Notably, the District Court stated that Hardee was a career offender and its suggested findings reflected that designation.

---

[3] The drug quantity considered at sentencing may differ from the quantity underlying a defendant's conviction. U.S. Sentencing Guidelines Manual § 1B1.3(a)(1)(B).

After the prosecutor requested further briefing of the sentencing manipulation issue, the District Court continued the sentencing hearing. The prosecutor, however, did not submit a follow-up brief. She instead filed a letter incorporating a previous sentencing memorandum in which she argued that Hardee was a career offender and the 360 months to life imprisonment Guidelines range applied without any variance.

Hardee's second sentencing hearing was held almost five months later. At that hearing, the District Court indicated that it agreed with the PSR's findings regarding the robbery conspiracy charge. The District Court did not restate the finding that the total offense level was 34; however, it reiterated its criminal history category and drug quantity findings from the first hearing. Based on those findings, the District Court announced, for the first time, a base offense level of 24 while still recognizing that it could only reduce the criminal history category by one because of Hardee's career offender designation. The prosecutor inquired of the District Court whether the career offender guideline would be applied, because the District Court had previously announced a total offense level of 34, and that she believed Hardee was still subject to a 10-year mandatory minimum sentence. The District Court indicated that it had changed the mandatory minimum based on the reduced drug quantity and referred to the change as a departure.

After this pronouncement, in consideration of other enhancements and reductions not at issue on appeal, the District Court found that the total offense level was 26 before a variance. Based on this finding, the District Court announced a Guidelines range of 110

to 137 months' incarceration. The prosecutor raised objections to the District Court's drug quantity decision and its career offender finding, but also stated that she accepted the District Court's career offender finding after raising these issues.

The District Court then considered the factors enumerated in 18 U.S.C. § 3553(a). Based on these factors, the District Court applied a two-level downward variance, resulting in a 92 to 115 months' incarceration Guidelines range. Based on this Guidelines range, the District Court sentenced Hardee to 92 months on each count to be served concurrently.

Thereafter, the District Court entered a judgment and conviction order along with a statement of reasons. The statement of reasons mirrored the pronouncements at the second sentencing hearing and added that the District Court had found that Hardee was not a career offender. The statement of reasons did not provide any indication that the base offense level was 37 or that the beginning Guidelines range was 360 months to life imprisonment. The Government appealed Hardee's sentence. Hardee did not cross-appeal.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231. This Court has jurisdiction over this appeal pursuant to 18 U.S.C. § 3742(b). This Court exercises plenary review over the sentencing court's interpretation and application of the

6

Guidelines, exercises clear error review over determinations of fact, and gives due deference to the application of the Guidelines to the facts.[4]

## III.

The Government asserts that the District Court procedurally erred in sentencing Hardee to 92 months' incarceration. The parties disagree, however, about what issues are properly before this Court concerning that assertion and also about on what record this Court should base its review. We will consider the parties' contentions in turn.

## A.

Hardee contends that the Government waived several arguments before the District Court—the District Court's failure to apply the career offender guidelines, the 10-year mandatory minimum, and the correct drug quantity. The Government concedes that it did not preserve its argument that Hardee should have received, at least, a 10-year mandatory minimum sentence. The Government contends, however, that it raised the other allegedly waived arguments and, further, that in considering those arguments we should confine our analysis to the second sentencing hearing and the statement of reasons in which final findings were made.

Federal Rule of Criminal Procedure 51 states that a party may "preserve a claim of error by informing the court . . . when the court ruling . . . is made . . . of the action the party wishes the court to take."[5] A party's compliance with Rule 51 does not require

---

[4] *United States v. Zabielski*, 711 F.3d 381, 386 (3d Cir. 2013).
[5] Fed. R. Crim. P. 51.

7

"surgical precision," and putting the opposing party and the sentencing judge on notice of objections before and at a sentencing hearing is enough to fulfill Rule 51's requirements.[6]

The record indicates that the prosecutor raised the allegedly waived issues, other than the 10-year mandatory minimum, in its sentencing memorandum and at least four times during the sentencing hearings. The Government thus fulfilled Rule 51's requirements, and those issues are not waived.[7]

Hardee adds, however, that if not waived before the District Court, the Government waived issues on appeal by not raising them in the Issue Statement. The Issue Statement asserts that the District Court procedurally erred in not sentencing Hardee as a career offender. "When an issue is either not set forth in the statement of issues presented or not pursued in the argument section of the brief, the appellant has abandoned and waived that issue on appeal."[8] The Government's Issue Statement is narrow. But, broader arguments are asserted in the argument section of the Government's brief. Thus, except for the 10-year mandatory minimum, the Government preserved all of its arguments.

One of the Government's preserved arguments is that this Court must focus on the District Court's findings from the second sentencing hearing and in the statement of

---

[6] *United States v. Rivera*, 365 F.3d 213, 214 (3d Cir. 2004).

[7] Hardee also asserts that the Government is estopped from appealing his sentence because it did not appeal Dennis's sentence. However, the Government is not estopped from making different arguments amongst codefendants. *United States v. Dansker*, 581 F.2d 69, 74 (3d Cir. 1978) (estoppel inapplicable where the Government agreed that there was jurisdiction for codefendants but that jurisdiction was lacking over defendant).

[8] *Nagle v. Alspach*, 8 F.3d 141, 143 (3d Cir. 1993).

reasons. When reviewing a sentence, we must review the sentencing transcript as a whole.[9] This Court has undertaken a review of multiple sentencing hearings to complete this task.[10] Thus, this Court denies the Government's request that we only consider part of the record.[11]

B.

In considering the record as a whole and the issues before us, we find that the District Court committed reversible procedural error. A district court must follow a three-step process before deciding on a sentence. The District Court must: (1) correctly calculate the Guidelines; (2) review and rule on departure motions; and (3) meaningfully consider the factors enumerated in 18 U.S.C. § 3553(a).[12]

In order for this Court to undertake a meaningful appellate review of the District Court's process, the District Court must adequately explain the chosen sentence.[13] We review the District Court's explanation in two stages, employing the abuse of discretion

---

[9] *United States v. Ausburn*, 502 F.3d 313, 321 (3d Cir. 2007).

[10] *United States v. Jarvis*, 258 F.3d 235, 237 (3d Cir. 2001) (reviewing a record that included an informative Guidelines range order and two sentencing hearings).

[11] The Government's focus on one, edited, pronouncement from *Sole v. Wyner*, 551 U.S. 74, 84-85 (2007) ("the eventual ruling on the merits . . . supersede[s] the preliminary ruling"), is unavailing as well. *Sole* stands for the proposition that a preliminary ruling, hastily granted without an opportunity to consider a full record, is superseded by a later final ruling, based on a full record and more deliberate consideration. *Id.* at 84-86 (considering an order granting a preliminary injunction and an order granting summary judgment). This is inapplicable to a continued sentencing hearing that was based on a developed trial and post-trial record.

[12] *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006).

[13] *Gall v. United States*, 552 U.S. 38, 50 (2007).

9

standard.[14] The first stage, which we review here, requires this Court to determine whether the District Court committed a procedural error, "such as failing to calculate (or improperly calculating) the Guidelines range . . . or failing to adequately explain the chosen sentence."[15] If procedural error is found, we will normally remand for resentencing.[16]

Here, the District Court's process was inadequately explained for meaningful appellate review. The District Court indicated that it was changing the base offense level and corresponding Guidelines range at step one because of the reductions of the criminal history category and drug quantity. The District Court later stated that those reductions were departures, a step two incorporation. In the statement of reasons, the District Court reverted to the initial finding that the base offense level was changed and specifically stated that Hardee was not a career offender, indicating that those changes were undertaken at step one. Consequently, the record is unclear about when, during the three-step process, the District Court actually made the two major reductions at issue. This lack of clarity is procedural error.

Moreover, if the reductions were in fact made at step one and changed the base offense level itself, rather than being incorporated as a departure, they were procedurally erroneous. At step one, a district court is tasked with correctly calculating the Guidelines

---

[14] *United States v. Wright*, 642 F.3d 148, 152 (3d Cir. 2011).
[15] *Gall*, 552 U.S. at 51.
[16] *United States v. Merced*, 603 F.3d 203, 214 (3d Cir. 2010).

range as it would have when the Guidelines were mandatory.[17] Accordingly, the career offender guidelines should have been implemented without any changes. Further, even if properly applied at step one, the drug quantity reduction would have still placed Hardee at a final offense level of 34 after application of the career offender guidelines.[18]

Finally, at any part of the process, the District Court was bound by "the facts necessarily implicit in the [jury's] verdict."[19] The jury found that Hardee was guilty of conspiracy to distribute 5 kilograms or more of cocaine, even though a lesser included drug quantity offense, 500 grams or more, was included in the verdict form. "[D]istrict courts are *required* to sentence defendants guilty of [specific] crime[s] to a term of imprisonment no less than the Congressionally prescribed minimum, unless an explicit exception to the minimum sentence applies."[20] Given that the minimum sentence is congressionally mandated and an exception does not apply, the District Court was required to sentence Hardee to at least 120 months' incarceration based on the jury's

---

[17] *Gunter*, 462 F.3d at 247.

[18] 21 U.S.C. § 841(b)(1)(B) (500 grams or more of cocaine triggers a mandatory minimum 5-year sentence and the career offender offense level would therefore be 34 pursuant to § 4B1.1(b) of the Guidelines).

[19] *United States v. Boggi*, 74 F.3d 470, 478-79 (3d Cir. 1996) (internal quotation marks omitted).

[20] *United States v. Winebarger*, 664 F.3d 388, 392 (3d Cir. 2011) (emphasis added) (exceptions are made for government motions pursuant to § 5K1.1 of the Guidelines and under the "safety valve" which applies only to offender with a criminal history category of 1). Neither exception applies. *See id.* at 392-93.

finding that 5 kilograms or more of cocaine was involved. This issue could therefore not be waived.[21] Thus, significant procedural error occurred.

Nevertheless, even if a district court commits procedural error in sentencing, this Court may still affirm if the error is harmless.[22] The errors here, however, were not harmless. The record does not support a finding that there is a high probability that a 92 months' sentence would have been imposed if the District Court had correctly calculated the Guidelines range or properly considered the jury verdict.[23] Thus, remand is required.

## IV.

For the reasons set forth above, we will reverse the order of the District Court and remand for resentencing.

---

[21]*United States v. Cordero*, 313 F.3d 161, 165-66 (3d Cir. 2002) (holding that even when the Government concedes that an exception exists, the District Court is still required to use the mandatory minimum sentence as the starting point, not the Guidelines range that would apply otherwise); *United States v. Allen*, 450 F.3d 565, 569 (4th Cir. 2006) (relying on a statutory mandatory minimum sentence rather than both parties' assertions that the Government had fulfilled one of the allowed exceptions to such a sentence).

[22] *Zabielski*, 711 F.3d at 386.

[23] *See id.* at 387. The District Court referred to Dennis's 15-year sentence which incorporated the firearm conviction that did not apply to Hardee. However, the consideration of a possible sentencing disparity does not overcome the procedural missteps at steps one and two of the sentencing process. *See United States v. Ali*, 508 F.3d 136, 154 (3d Cir. 2007) ("[P]reliminary errors at steps one and two taint[ ] the step three analysis[, which requires consideration of disparity between sentences,] and resulting sentence . . . .").